OPINION
{¶ 1} Appellant, Ryan L. Braden, appeals a decision by the Portage County Court of Common Pleas, Domestic Relations Division, which denied appellant's request for custody and instead restricted appellant's visitation rights with his two minor children. For the reasons that follow, we affirm.
 {¶ 2} Appellant and Kristina L. Braden, appellee herein, were divorced on February 6, 2004. The parties are the parents to two minor children; Tyler, d.o.b. 1-10-97 and Travis, d.o.b. 8-18-02. Following the divorce, appellee was named custodial parent of the two minor children. Appellant was ordered to have reasonable visitation, but no less than the court's standard order.
 {¶ 3} On October 27, 2004, appellant filed an emergency motion seeking either custody or shared parenting of the parties' minor children. Due to the concerns raised by appellant, the court ordered home studies, psychological evaluations and drug and alcohol testing. Atty. Robert E. Rosenberg was appointed by the trial court as guardian ad litem to investigate the custody dispute and appellant's concerns.
 {¶ 4} Atty. Rosenberg filed a report wherein he recommended that appellee continue as the custodial parent. Following this report, appellant requested that Atty. Rosenberg be removed as guardian ad litem. Appellant, through his legal counsel, requested that Atty. Benito Antognoli be appointed guardian ad litem instead. The court refused to remove Atty. Rosenberg but accommodated appellant's concerns by appointing Atty. Antognoli as co-guardian ad litem.[1] The home studies were completed on both homes revealing no problem areas. However, appellant's home study was inconclusive as a result of his failure to actively participate in the home study. At the request of appellant, Dr. John E. Alexander conducted the psychological evaluations. According to Dr. Alexander, appellant's concerns regarding appellee's inability to properly care for the children were unfounded. Dr. Alexander further observed that the parties' oldest son was anxious and concerned that Father would discover the nature of his conversations with the psychologist. There was no evidence to suggest that the child was not happy with the current custodial arrangements.
 {¶ 5} Atty. Antognoli submitted his first report on February 3, 2006. This guardian ad litem also recommended that appellee maintain legal custody. The report also expressed concern that appellant was making derogatory statements about appellee to the children. The report stated that if appellant was unable to rectify his behavior, supervised visitation should be considered. On February 7, 2006, Atty. Antognoli submitted a supplemental report wherein he recommended appellant's visitation be restricted to supervised only and no telephone contact. This recommendation came as a result of appellant's alleged inability to refrain from inappropriately influencing the oldest child. According to the report and confirmed by appellant at trial, appellant had instructed the minor child to report his mother to school officials for failing to care for them properly.
 {¶ 6} On January 13, 2006, appellant filed a motion requiring appellee to show cause why she failed to comply with the holiday visitation schedule. Both motions came on for hearing on March 14, 2006. The trial court issued its judgment entry on March 16, 2006. In its judgment entry, the trial court denied appellant's motion for custody or shared parenting and modified appellant's visitation rights with his minor children to supervised visitation only. The trial court ordered appellant to have supervised visitation every Saturday and Sunday for a three-hour period each day. The court ordered no telephone contact between appellant and the minor children. This was a provisional order by the trial court. The trial court implemented the supervised visitation "until the counselor engaged by Defendant advises the [c]ourt when Defendant may resume unsupervised visitations to serve the best interests of the children.
 {¶ 7} A trial court's decision regarding the allocation of parental rights and responsibilities will not be disturbed on appeal absent an abuse of discretion. Masters v. Masters (1994), 69 Ohio St.3d 83, 85. Appellate consideration of visitation matters is also reviewed pursuant to an abuse of discretion standard. Braatz v. Braatz (1999),85 Ohio St.3d 40, 45. Abuse of discretion connotes more than error of judgment, it implies that the court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 8} Appellant sets forth the following assignments of error:
 {¶ 9} "[1.] The Trial Court lacked jurisdiction to enter an order modifying Defendant/Appellant's visitation rights where no motion to modify Defendant/Appellant's visitation had been filed with the Court.
 {¶ 10} "[2.] The Court failed to apply the statutory factors listed at R.C. 3109.051(D) when it determined that Father should have supervised visitation with the children.
 {¶ 11} "[3.] The [C]ourt abused its discretion and acted contrary to statute when it failed to consider the children's wishes regarding contact with their Father.
 {¶ 12} "[4.] The [C]ourt abused its discretion when it relegated Father to supervised visitation and no telephone contact with the children."
 {¶ 13} In appellant's first assignment of error, he challenges the trial court's jurisdiction to restrict his companionship rights when there was no formal motion presented to the court requesting the modification of appellant's companionship rights. The original adjudicating trial court retains jurisdiction regarding custody, support and related matters. In Re Byerly, 11th Dist. Nos. 2001-P-0158 2001-P-0159, 2004-Ohio-523, at ¶ 38; see, also, Hardesty v.Hardesty (1984), 16 Ohio App.3d 56, 58. Although no motion was before the trial court requesting a modification of visitation per se, appellant's motion for custody and his motion to show cause provided the means through which the trial court reached the restriction of appellant's visitation rights. Prompted by appellant's motion seeking custody, the trial court was required to act in the best interest of the minor children. Bouffard v. Bouffard, 7th Dist. Nos. 00-CA-59 00-CA-44, 2001-Ohio-3148, *5. It was not unreasonable for the trial court to examine the visitation rights of appellant in light of the evidence presented to the trial court on the heels of appellant's motion for custody. See, Chauncey v. Chauncey (Dec. 1, 1994), 8th Dist. No. 66197, 1994 Ohio App. LEXIS 5369, *8. (Converting motion for visitation into motion for custody). In addition, appellant's motion to show cause required an examination of the visitation issues between the parties and their minor children by its very subject matter.
 {¶ 14} Appellant opened the door for the trial court to make a complete custody evaluation by filing his motion for sole custody. Id. As part of the court's custody evaluation, and in order to protect the best interest of the minor children, the trial court issued a custody determination that included a restriction of appellant's visitation rights. This was not an abuse of discretion.
 {¶ 15} In the alternative, appellant claims he was denied due process by the trial court's sua sponte modification of his visitation. Contrary to appellant's assertion that he was not provided prior notice of the modification request, appellant was indeed on notice of the potential for the reduction in his visitation rights. Atty. Antognoli, the second court-appointed guardian ad litem, filed a supplemental report on February 9, 2006. On that same day, the trial court issued letters to each parties' legal counsel as well as the co-guardian ad litem, advising that the report had been filed and was available for review at the court. The hearing in this matter was March 14, 2006. Atty. Antognoli's supplemental report is quite clear as to his recommendation regarding appellant's restricted and supervised visitation. Furthermore, appellant had the opportunity to question Atty. Antognoli regarding his report and recommendation at the hearing in this matter. Appellant also testified and presented his rebuttal argument to the guardian ad litem's recommendation.
 {¶ 16} Due process requires both notice and opportunity to be heard.Byerly, supra. Appellant was present at the hearing. Appellant was represented by counsel. Appellant testified on his own behalf. Appellant should have been aware that the trial court would be considering a restriction on appellant's visitation rights given the strong recommendation in Atty. Antognoli's supplemental report filed more than a month prior to the hearing. Appellant did not request a continuance or express a desire to present additional evidence. In short, appellant was not denied due process. See, Yeupell v. Yeupell, (June 7, 1996), 6th Dist. No. WM-95-021, 1996 Ohio App. LEXIS 2298, *4.
 {¶ 17} Appellant's first assignment of error is without merit.
 {¶ 18} Appellant's second assignment of error claims the trial court applied the wrong law when it restricted appellant's visitation with his minor children. Modification of visitation rights is governed by R.C. 3109.051. Braatz, supra, at paragraph one of the syllabus. In the judgment entry, the trial court specifically references R.C. 3109.04 and states that the court has considered those statutory factors in rendering its decision regarding custody. As part of the court's custody determination, the court restricted appellant's visitation rights. This restriction necessitates a consideration of the factors set forth in R.C. 3109.051 which provides in relevant part:
 {¶ 19} "(D) In determining whether to grant parenting time to a parent pursuant to this section * * * the court shall consider all of the following factors:
 {¶ 20} "(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity * * *;
 {¶ 21} "(2) The geographical location of the residence of each parent and the distance between those residences * * *;
 {¶ 22} "(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;
 {¶ 23} "(4) The age of the child;
 {¶ 24} "(5) The child's adjustment to home, school, and community;
 {¶ 25} "(6) If the court has interviewed the child in chambers, * * * the wishes and concerns of the child * * *;
 {¶ 26} "(7) The health and safety of the child;
 {¶ 27} "(8) The amount of time that will be available for the child to spend with siblings;
 {¶ 28} "(9) The mental and physical health of all parties;
 {¶ 29} "(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;
 {¶ 30} "(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;
 {¶ 31} "(12) * * * whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * * and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;
 {¶ 32} "(13) Whether the residential parent of one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 33} "(14) Whether either parent has established a residence or is planning to establish a residence outside this state;
 {¶ 34} "(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents * * *
 {¶ 35} "(16) Any other factor in the best interest of the child."
 {¶ 36} When modifying visitation, the trial court is required to consider these sixteen factors and then set forth visitation that is in the best interest of the minor children. Braatz, supra, at 45. The trial court specifically referenced and incorporated the following documents into its order: "the drug and alcohol assessment conducted by Townhall II; the Guardian Ad Litem report of Attorney Rosenberg; the home study evaluations conducted by Family Community Services, Inc. of the separate homes where the children reside with the Plaintiff when they are with her and where they visit with the Defendant when they are with him; the psychological evaluation of Dr. John Alexander; and Attorney Antognoli's Guardian Ad Litem separate reports of February 3, 2006 and February 9, 2006."
 {¶ 37} A review of the record, including those specific documents incorporated by the trial court and listed above, confirms that the trial court did consider the factors listed in R.C. 3109.05 even though it did not specifically reference or enumerate those factors. It is not necessary for a court to recite each and every factor. North v.Murphy (Mar. 9, 2001), 5th Dist. No. 2000AP050044,2001 Ohio App. LEXIS 1114, *8; see, also, Smith v. Smith (1991), 75 Ohio App.3d 679, 684.
 {¶ 38} The factors listed in R.C. 3109.04 are essentially the same as those factors listed in R.C. 3109.051. However, R.C. 3109.051(D), the statute governing visitation, includes the following additional factors:
 {¶ 39} " * * *
 {¶ 40} "(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;
 {¶ 41} "(4) The age of the child;
 {¶ 42} " * * *
 {¶ 43} "(7) The health and safety of the child;
 {¶ 44} "(8) The amount of time that will be available for the child to spend with siblings; * * *."
 {¶ 45} The home study evaluation of the Family and Community Services, Inc. sufficiently provided consideration of the parents' and child's available time. In respect to appellee, the study outlined her work schedule as it coordinated with the children's school and child care schedules. Likewise, the report included a questionnaire filled out by appellant that indicated his availability for the children was unlimited due to his unemployment.
 {¶ 46} The ages of the children was properly considered by both guardians ad litem as well as Dr. Alexander. The children's ages and accompanying maturity was detailed in Dr. Alexander's custody evaluation.
 {¶ 47} The health and safety of the children was outlined in each guardian ad litem report and in the custody evaluation. Each corresponded to a nearly identical diagnosis. The health and safety of the children was better served by the current custodial arrangements. The supplemental report of Atty. Antognoli as guardian ad litem was even more directed at the health and safety of the children; specifically their mental and emotional well-being. Specifically, Atty. Antognoli stated, "* * * Mr. Braden continues to engage in conduct not befitting a proper parent. This behavior is further evidence of his propensity to allow his disdain for Ms. Braden to override common sense with regard to the care and proper treatment of his children."
 {¶ 48} The children do not have any other siblings for consideration of the final factor.
 {¶ 49} Therefore, upon review of the entire record, specifically the reports incorporated into the trial court's order, it is clear that although the trial court did not specifically enumerate the laundry list of factors contained within R.C. 3109.051, each factor was properly considered as was each factor contained within R.C. 3109.04.
 {¶ 50} Appellant's second assignment of error is without merit.
 {¶ 51} Appellant's third assignment of error challenges the trial court for failing to consider the children's wishes regarding contact with appellant prior to rendering its decision. R.C. 3109.051 does not require the court to consider the children's wishes unless the children are interviewed in chambers and are capable of expressing those interests. Furthermore, as discussed herein, the court incorporated the custody evaluation of Dr. Alexander as well as the guardian ad litem reports. The custody evaluation detailed Dr. Alexander's discussions with the oldest child wherein he expressed his wishes. "When I asked if he thought that he sees his Father enough, his response was `Yeah.' When I then asked if he thought that he sees his Mother enough, his comment was that he would prefer to see her `a little bit more.'" The child reiterated that he was comfortable with the current custodial and visitation arrangements during another visit with Dr. Alexander. Therefore, based on the record, the wishes and concerns of the oldest child were properly considered by the trial court even though the trial court did not interview the children.[2] In addition, according to R.C. 3109.051(C), which states in relevant part, "* * *the court, in its discretion, may interview in chambers any or all involved children regarding their wishes and concerns." Due to the age of the children, the circumstances of the situation and the fact that a custody evaluation had been performed by a physician as well as an investigation by two guardian ad litem, we cannot conclude that the trial court abused its discretion by failing to interview the children regarding their wishes when that decision is optional in the first place. Second, the record demonstrates the children's wishes were properly considered.
 {¶ 52} Appellant's third assignment of error is without merit.
 {¶ 53} Appellant's fourth assignment of error again asserts that the trial court abused its discretion in restricting appellant's visitation with the minor children. The record does not support this assignment of error. Two guardians ad litem submitted reports that indicated instability in appellant's emotional status. The second guardian ad litem strongly cautioned appellant in his first report that his controlling behavior was inappropriate in relation to his children and that further actions consistent with his previous behavior would result in a recommendation for supervised visitation. Atty. Antognoli stated that appellant engaged in inappropriate conduct in front of the children on a repeated basis. He further advised appellant that he refrain from making derogatory comments about appellee to the children and discontinue his efforts to influence the children regarding the custody matter. Appellant failed to heed this advice. Therefore, the supplemental report of Atty. Antognoli recommended the supervised visitation and suspension of telephone contact. This recommendation was based on actual events, not speculation.
 {¶ 54} Further, this recommendation is supported throughout the record. Dr. Alexander's custody evaluation discussed the oldest child's concerns that his discussions with the doctor would be repeated to his father, appellant. Dr. Alexander's evaluation further confirmed appellant was capable of this controlling behavior by finding that persons consistent with appellant's psychological profile, "* * * typically have exaggerated needs for affection and tend to manipulate others for sympathy and attention."
 {¶ 55} A trial court must act in the best interest of the child.Bouffard, supra. The trial court went to great lengths in its judgment entry to outline the basis for its decision. The trial court was clearly looking out for the children's best interests. Based on the evidence before it, we cannot say that the trial court abused its discretion in modifying appellant's visitation from unsupervised to supervised. Nor can we say the trial court abused its discretion in terminating appellant's telephone contact.
 {¶ 56} Appellant's fourth assignment of error is without merit.
 {¶ 57} For the reasons stated in the Opinion of this court, it is the judgment and order of this court that the judgment of the Portage County Court of Common Pleas, Domestic Relations Division, is affirmed.
WILLIAM M. O'NEILL, J., COLLEEN MARY OTOOLE, J., concur.
[1] The guardians ad litem did not discuss the case or their recommendations during the pendency of the matter.
[2] It is important to note that the youngest child would have been less than four years old at the time of the hearing. Therefore, based on the child's expression ability and comprehension factor, it was appropriate for the court to only consider the wishes and concerns of the oldest child.